[No. D008973. Fourth Dist., Div. One. Mar. 22, 1991.]

CYNTHIA M., a Minor, etc., et al., Plaintiffs and Appellants, v. RODNEY E. et al., Defendants and Respondents.

COUNSEL

Moore & Bailey and Mark R. Moore for Plaintiffs and Appellants.

Wesley & Murray, Robert F. Wesley and Harold G. Murray for Defendants and Respondents.

---

**OPINION**

**TODD, J.**—This lawsuit presents the issue of whether the parents of a minor who impregnates his girlfriend are liable for civil damages under Civil Code[1] section 1714.1 resulting from the ensuing birth of the child.

## FACTS

In 1985, when they were both minors, Cynthia M. and Rodney E. had a dating relationship. In March 1986, Cynthia, then 16 years old, gave birth to a child. The father was Rodney. The baby had to remain in the hospital after Cynthia was discharged because of complications. Because their insurance coverage did not cover the baby's hospital bill once Cynthia was discharged, her parents incurred noncovered hospitalization costs for the baby of approximately $10,000. On June 1, 1987, Cynthia, by her guardian ad litem Carolyn B., and Carolyn and Jeff B. filed a complaint, later amended, against Rodney, Joanne C., his mother, and Lee C., his stepfather, to establish paternity and for support as well as for indemnification and damages under section 1714.1. Pursuant to an order filed by the superior court on September 17, 1987, after a default hearing, Rodney was declared to be the father. The superior court reserved jurisdiction over the issue of support. The balance of the suit proceeded to trial on the briefs of the parties on July 29, 1988. On August 18, 1988, the trial court entered judgment in favor of Joanne and Lee C., ruling (1) Lee C., as a stepparent, is not a "parent" within the meaning of section 1714.1 and (2) consensual sexual intercourse between minors does not constitute "willful misconduct" within the meaning of section 1714.1.

## DISCUSSION

Traditionally, under the common law, the mere fact of a parent-child relationship was not a basis for vicarious liability. (*Hagerty* v. *Powers* (1885) 66 Cal. 368 [5 P. 622].) At common law, parental liability for a child's tort was imposed only when there was an agency relationship (see, e.g., *Kallenberg* v. *Long* (1924) 68 Cal.App. 317 [229 P. 57]) or when the parent was himself or herself guilty in some way in the commission of the crime (see, e.g., *Ellis* v. *D'Angelo* (1953) 116 Cal.App.2d 310 [253 P.2d 675]).

---

[1] All statutory references are to the Civil Code unless otherwise specified.

California followed this rule of nonliability for parents absent some fault by the parent or the application of a theory of vicarious liability until the enactment of section 1714.1 in 1955.[2]

In its original form, section 1714.1 provided:

"Any act of wilful misconduct of a minor which results in any injury to the property of another shall be imputed to the parents having custody or control of the minor for all purposes of civil damages, and such parents having custody or control shall be jointly and severally liable with such minor for any damages resulting from such wilful misconduct.

"The joint and several liability of one or both parents having custody or control of a minor under this section shall not exceed three hundred ($300) for each tort of the minor. The liability imposed by this section is in addition to any liability now imposed by law." (Stats. 1955, ch. 820, § 1, p. 1438.)

The statute has been amended repeatedly over the years, the latest amendment coming in 1983. In its present form, section 1714.1, in pertinent part, provides:

"(a) Any act of willful misconduct of a minor which results in injury or death to another person or in any injury to the property of another shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct.

"The joint and several liability of the parent or guardian having custody and control of a minor under this subdivision shall not exceed ten thousand dollars ($10,000) for each tort of the minor, and in the case of injury to a person, imputed liability shall be further limited to medical, dental and hospital expenses incurred by the injured person, not to exceed ten thousand dollars ($10,000). The liability imposed by this section is in addition to any liability now imposed by law."

 First, we consider whether consensual intercourse with a minor is "willful misconduct" within the meaning of section 1714.1.

---

[2] Before 1955, statutory vicarious liability of the parent for the torts of the minor in California was restricted to sections of the Vehicle Code and Education Code. (See former Veh. Code, §§ 350-354 [now Veh. Code, § 17700 et seq.] particularly Veh. Code, § 17708. Also, see former Ed. Code, § 16074 [now Ed. Code, § 48904].)

As originally enacted, parental liability statutes were intended to make parents legally responsible for the tortious acts of their minor children and were generally aimed at acts of juvenile delinquency, vandalism and malicious mischief.[3] (Annot., Validity and Construction of Statutes Making Parents Liable for Torts Committed by Their Minor Children (1966) 8 A.L.R.3d 612, 615.) The original version of section 1714.1, for example, was limited to property damage.[4] (Stats. 1955, ch. 820, § 1, p. 1438.) The statute was amended 10 years later to make parents liable for personal injuries as well as property damage willfully caused by their children and to increase the maximum liability to $500. (Stats. 1965, ch. 407, § 1, p. 1719.) Subsequent amendments increased the maximum liability,[5] added a section dealing with defacement of property,[6] extended liability to guardians as well as parents,[7] and restricted liability to parents and guardians who have custody and control of the minor.[8] The 1983 amendment also included the following language:

"This act is part of the Crime Victim Restitution Program of 1983 in that it increases the ability of victims of juvenile crime to obtain restitution by doubling parental liability for crimes committed by minors." (Stats. 1983, ch. 981, § 2, p. 3495.)

Here, even though there was never a hint of criminal prosecution, we are dealing with conduct by Rodney that fits the definition of unlawful sexual intercourse because he and Cynthia were not married and she was under 18 years of age. (Pen. Code, § 261.5.) ██ ██ The undisputed fact that Cynthia consented to sexual intercourse with Rodney is, of course, not a defense to the crime of unlawful sexual intercourse. (*People v. MacDonald* (1914) 167 Cal. 545 [140 P. 256].)[9] Thus, we are presented with circum-

---

[3] A possible exception to this is the parental responsibility statute for Louisiana, which was probably the first state to enact such a law. Derived from the French Civil Code, the Louisiana statute made parents answerable in damages for the acts of their minor and unemancipated children irrespective of any act or omission on the part of the parents themselves.

[4] California State Senator Edwin J. Regan, the legislator who introduced the bill that became section 1714.1, stated in a letter dated October 21, 1955, that he did so at the request of the home building industry. The letter, as quoted in Recent Legislation (1955) 43 Cal.L.Rev. 874, 877, footnote 28, said in part: "This industry demonstrated the need for such legislation through testimony presented to the [judiciary] committee; minors have long enjoyed new home buildings as places for what some might call juvenile sport but which builders labeled wanton and malicious destruction."

[5] (See Stats. 1970, ch. 640, § 1, p. 1258; Stats. 1972, ch. 442, § 1, p. 811; Stats. 1979, ch. 127, § 1, p. 314; and Stats. 1983, ch. 981, § 1, p. 3494.)

[6] (See Stats. 1974, ch. 340, § 1, p. 670.)

[7] (See Stats. 1979, ch. 127, § 1, p. 314.)

[8] (See Stats. 1983, ch. 981, § 1, p. 3494.)

[9] We note, however, that mistake of fact is a defense to Penal Code section 261.5 (*People v. Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092]); hence,

stances involving a crime, which is punishable as a misdemeanor or felony. (Pen. Code, § 264.) Undoubtedly, in most situations criminal conduct that is potentially a felony would constitute willful misconduct. However, in this context it is too simplistic to say because Rodney committed a crime his actions amounted to willful misconduct within the meaning of section 1714.1. Damages are being sought here because Cynthia became pregnant as a result of having intercourse with Rodney, not because of the intercourse itself.[10] Although the record on appeal does not contain any material of evidentiary import on the subject, the B.'s (Cynthia's mother and stepfather) argue in their trial and appellate briefs that both they and the C.'s knew that Rodney and Cynthia were engaging in sexual activity and that the B.'s discussed "the dangers of pregnancy" with the minors.[11] Under this scenario, the pregnancy can as easily be attributed to negligence on the part of Rodney and Cynthia in not practicing birth control as it can to willful misconduct on the part of Rodney.[12]

Furthermore, in addressing whether this particular criminal conduct should carry civil liability under the statute, it is important to remember civil and criminal law involve different considerations and distinctions. For example, the criminal law does not recognize consent by a person under the age of 18 as a defense. The different treatment civilly of the concept of consent is striking. There is no hard-and-fast rule as to the age at which a person attains the capacity to consent to bodily invasions. "A minor acquires capacity to consent to different kinds of invasions and conduct at different stages in his development. Capacity exists when the minor has the ability of the average person to understand and weigh the risks and benefits." (Prosser & Keeton, Torts (5th ed. 1984) § 18, p. 115, fn. deleted.) Moreover, decisional and statutory law is replete with examples of situations in which a child over the age of 14 is deemed to have the mental capacity of an adult. In California, minors of that age are capable of obtaining an abortion or birth control devices (§ 34.5), consenting to certain types of medical and mental health treatment (§§ 25.9, 34.7 et seq.) and being emancipated (§ 64). Similarly, here, where we are addressing civil liability, we deem consent of an individual under the age of 18 a permissible consideration.

---

the modern law refuses to impose blanket criminal liability to all conduct constituting sexual intercourse with a minor female.

[10] We note Penal Code section 261.5, the unlawful sexual intercourse statute, does not define culpability in terms of sexual intercourse that leads to pregnancy.

[11] In their respondents' brief, the C.'s state they as well as the B.'s admonished the children about the risks of having sex. However, in their trial brief, the C.'s state they had no previous knowledge of Rodney's sexual activity with Cynthia or anyone else.

[12] The amended complaint does not allege negligence against the C.'s for failure to adequately counsel Rodney about the risks inherently involved with sexual activity. The amended complaint seeks redress from the C.'s strictly under the imputed liability of section 1714.1.

 As mentioned above, a parental responsibility statute, such as section 1714.1, is in derogation of the common law. Therefore, it should be strictly construed. (Annot., Validity and Construction of Statutes Making Parents Liable for Torts Committed by Their Minor Children, *op. cit. supra*, 8 A.L.R.3d 612, 616.) In *Weber* v. *Pinyan* (1937) 9 Cal.2d 226, 229 [70 P.2d 183, 112 A.L.R. 407], our Supreme Court discussed this rule of construction in interpreting the imputed negligence statute for owners of motor vehicles:

"Since the imputed negligence statute created a new right of action, giving a remedy against a party who would not otherwise be liable, it must be strictly construed."

Recently, the First District Court of Appeal considered section 1714.1 in *Robertson* v. *Wentz* (1986) 187 Cal.App.3d 1281 [232 Cal.Rptr. 634], which concerned a lawsuit against the parent of a 17-year-old who killed an individual during the course of a store robbery. The *Robertson* court, while analyzing a portion of the statute not at issue here, made the following general observations:

"Civil Code section 1714.1, subdivision (a) imposes vicarious and strict liability upon a parent for acts of the child if the statutory requirements are met. [Citations.] The obvious purpose of the law is to provide a satisfactory remedy to *innocent* third parties injured by a minor where, for all practical purposes, none is available under the common law. (Stokes, *Insurance: Liability of Insurer Under Personal Liability Policy for Damage Caused by Wilful Misconduct of Insured's Child—Application of New California Statute* (1955) 7 Hastings L.J. 98, 99-101.) As one commentator has observed: 'The rule of public policy would seem to be, and rightly so, that between *innocent* third parties and parents of a minor child causing damage through wilful misconduct, the latter should bear the burden of responsibility.' (*Id.*, at p. 101.)

"Thus, the obvious purpose of Civil Code section 1714.1, subdivision (a) is to protect and compensate injured *innocent* third persons by expanding the common law scope of parental liability for willful misconduct by children. At the same time, the amount of stautory liability is limited." (*Robertson* v. *Wentz, supra*, 187 Cal.App.3d at p. 1293, fn. omitted, italics added.)

 We have emphasized the word "innocent" because we believe there is an important distinction between a party who is injured through no fault of his or her own and an injured party who willingly participated in the

offense about which a complaint is made. Given the admittedly scant legislative history of section 1714.1 (see 43 Cal.L.Rev., *supra*, at p. 877, fn. 28), we do not believe the Legislature intended section 1714.1 to encompass torts in which the injured party was a willing participant in the "willful misconduct." "Between those who are equally in the right, or equally in the wrong, the law does not interpose." (§ 3524.) Also, "He who consents to an act is not wronged by it." (§ 3515.) Therefore, we conclude the unlawful sexual intercourse here, which was consensual, does not constitute "willful misconduct" within the meaning of section 1714.1.[13]

We have found no California cases on the subject. However, there is a Louisiana case, albeit an old authority, that is directly on point. In *Overhultz* v. *Row* (1922) 152 La. 9 [92 So. 716], the Louisiana Supreme Court affirmed a judgment for the father of a minor son who impregnated his fiance and then refused to marry her. The Louisiana Supreme Court said there was no cause of action under the Louisiana parental liability statute because "to recognize the asserted right to recover would be to permit plaintiff to profit by the wrong to which she voluntarily was a party . . . ." (92 So. at p. 717; see also *Meinke* v. *Dominguez* (La.App. 1979) 377 So.2d 868.)[14]

For all of the above reasons, we deem the consensual sexual intercourse involved here is not "willful misconduct" within the meaning of section 1714.1.

Since we find no basis for liability of defendants in this case, we do not reach the question of the particular liability of Lee C. as the stepfather of the minor, Rodney E.

---

[13] Furthermore, in articulating its desire to more fully compensate victims of juvenile crime with the 1983 legislation, it is doubtful the Legislature had in mind victims of statutory rape who willingly partook in the act of intercourse. A person who is injured as a result of criminal conduct in which the injured person willingly participated is not a typical crime victim.

[14] The plaintiff in *Overhultz* was not a minor. Since under Louisiana law at the time, a female under the age of 18 was legally incapable of consenting to coitus, it is not entirely clear how the court would have ruled had the plaintiff been a minor. (See *Brunet* v. *Deshotels* (1926) 160 La. 285 [107 So. 111].) However, we are not inclined to dwell on outdated legal fictions concerning the ability of underage females to consent to sex. The fact of the matter is that in the latter part of the 20th century, a substantial percentage of minors of both sexes are engaging in sexual activity. (See *Michael M.* v. *Superior Court* (1979) 25 Cal.3d 608, 611 [159 Cal.Rptr. 340, 601 P.2d 572].) Pregnancies among unwed teenage girls are a major contemporary problem and phenomenon. (*Ibid.*) To cling to vestiges of a bygone era is to ignore the contemporary realities of nature.

## DISPOSITION

Judgment affirmed.

Wiener, Acting P. J., and Work, J., concurred.